# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

STEPHANIE BOWMAN, et al.,      :

     Plaintiffs,          :

vs.                 :     CA 18-0100-KD-MU

AMERICAN FIDELITY GENERAL   :
AGENCY, INC.
                       :

     Defendant.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the Defendant's motion to dismiss Plaintiffs' amended complaint (Doc. 31), Plaintiffs' response in opposition (Doc. 33), and Defendants' reply (Doc. 35). Based on the contents of these and all other relevant pleadings in this matter, as well as certain attached materials, the Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss Plaintiffs' amended complaint (Doc. 31) be **DENIED**.

## FINDINGS OF FACT

The Plaintiffs in this action are school teachers who owned/held guaranteed life insurance policies offered by Fidelity Life,[1] each of which had a long-term care rider. (Doc. 28, ¶¶ 9 & 10.) The long-term care rider was offered at no additional cost (with no health questions asked), guaranteed issue at the time the insured requested long-term

---

[1] The "life base insurance premiums [] were guaranteed through age 120." (Doc. 28, ¶ 11).

coverage, was important to each Plaintiff, and, specifically, "provided for a benefit of 4% of the face value of the policy for each month of long-term care provided up to 75 months." (*Id.* at ¶¶ 12-14)[2]. Each policy holder's payments were payroll deducted. (*Id.* at ¶ 17).

Defendant American Fidelity obtained a list of teachers who had insurance paid for through payroll deductions and then approached educators holding Fidelity Life policies, including Plaintiffs, and offered each of them a term life policy underwritten by TexasLife Insurance Company. (*Id.* at ¶¶ 19-21). The TexasLife policies "did not have guaranteed premium for the life of the policy and did not have long-term care rider[s]." (*Id.* at ¶ 22). Plaintiff Stephanie Bowman purchased a TexasLife policy from American Fidelity Agent Randy Steele on March 6, 2015; Sabrina Scott bought such a policy from Agent Rex Bowman on March 6, 2015; Roseanne L. Wiggins purchased her TexasLife policy from Agent William Austin on February 25, 2015; Crystal Hanna bought her policy from Agent Randy Steele on March 2, 2015; and Arabella Sheehan purchased her TexasLife policy from Agent Curtis Wells on March 16, 2017 (*see id.* at ¶¶ 31-33), based upon the following omissions or representations:

> 25. American Fidelity did not reveal to the Plaintiffs that purchasing [its] policy would cause the Plaintiffs to lose long-term care insurance.

> 26. American Fidelity did not reveal to the Plaintiffs that purchasing [its] policy would cause the Plaintiffs' Fidelity Life policies to be

---

[2]     Following the Plaintiffs' purchase of this product, Fidelity Life discontinued its offer of life policies with a long-term care rider on a guaranteed issue basis (*id.* at ¶ 15) and "no current, substitute insurance policies are available with [] identical or similarly favorable [terms]." (*Id.* at ¶ 16).

cancelled. In most cases[, the agents] told them [American Fidelity was] replacing the policies but did not indicate on the application that it was a replacement or complete the required replacement paperwork.

27.     American Fidelity did not read out loud to the Plaintiffs language required by law which would have informed them about the differences between the policies they were purchasing and the policies being replaced. Had Plaintiffs been informed that the new policy did not have a long-term care rider, they would not have purchased the policies.

28.     American Fidelity did not show Plaintiffs the policies they were purchasing at the time of sale or otherwise allow them to read it. Plaintiffs purchased the policies based on American Fidelity's misleading oral representations alone. Plaintiffs were asked to sign an electronic signature box on an iPad or other tablet without being shown the policies.

29.     When American Fidelity recorded the sales, they cancelled the FidelityLife product. As a result, the plaintiff class has lost access to long-term care insurance.

30.     For some of the Plaintiffs, American Fidelity falsely claimed that they were not replacing existing insurance. On information and belief, for these policies, American Fidelity did not file the required forms with the state insurance department that would alert the department that the policies were being cancelled to avoid detection of their fraudulent practice.

(*Id.* at ¶¶ 25-30). In the same month Plaintiffs purchased their policies, American Fidelity mailed them copies of those policies along with other information (*id.* at ¶ 34); however, Plaintiffs aver that the letters accompanying the policies did not contain language allowing them "to know that their long-term coverage had been cancelled." (*Id.* at ¶ 35). Plaintiffs aver that they did not learn that their new policies lacked long-term care until November 2017 when "[a]n insurance salesman for an unrelated company informed [them] that their current policies lacked a long-term care provision." (*Id.* at ¶ 36).

The TexasLife insurance policies and paperwork relative to the five named Plaintiffs have been supplied to this Court (*see* Doc. 20, Exhibits 1-5), and, therefore, the contents of these documents can be considered herein. As made clear in the

complaint, the policies do not have long-term care riders or guaranteed premium for the life of the policies. Additionally, for purposes of this Report and Recommendation, the application paperwork certainly reveals the embedded statement that the applicant could "have valuable rights and benefits in the policy you now have that are not in the new one[,]" (Doc. 20, Exhibit 1, at 15; Exhibit 2, at 18; Exhibit 3, at 9; Exhibit 4, at 9 & Exhibit 5, at 16), which Defendant reads as clear direction to Plaintiffs to compare their old policies with the new ones (*see, e.g.,* Doc. 31, at 6).

The Plaintiffs' Amended Complaint asserts claims against American Fidelity for fraudulent misrepresentation (Doc. 28, at ¶¶ 48-51),[3] fraudulent suppression (*id.* at ¶¶ 52-55),[4] negligence (*id.* at ¶¶ 56-59),[5] and negligence *per se* (*id.* at ¶¶ 60-64)[6].

---

[3]     "The Defendant fraudulently represented to the Plaintiffs that the policies [it] sold were equivalent to the policies Plaintiffs currently held and that the premiums were more stable that the premiums on the FidelityLife products. These statements were untrue. The Plaintiffs and others similarly situated relied on the false representations to their detriment and suffered damages as a result." (*Id.* at ¶ 50).

[4]     "The Defendant concealed that purchasing [its] product would cause the Plaintiffs to lose long-term care coverage by canceling the Fidelity [L]ife products. Defendants had a duty under common law and Alabama's statutes and insurance regulations to disclose this fact. The Plaintiffs were induced to purchase the Defendant[']s[] inferior products as a result of this suppression and were damaged as a result." (*Id.* at ¶ 54).

[5]     "Defendant owed a duty under common law and Alabama's statutes and insurance regulations to honestly compare [its] product with the product [it] replaced and inform Plaintiffs that purchasing from [it] would effectively cancel their long-term care coverage. Defendant[] failed to do so. As a result, Plaintiffs were damaged." (*Id.* at ¶ 58).

[6]     "Defendant owed a duty under common law and Alabama's statutes and insurance regulations to honestly compare [its] product with the product [it] replaced and inform Plaintiffs that purchasing from [it] would effectively cancel their long-term care coverage. Defendant[] failed to do so. As a result, Plaintiffs were damaged." (*Id.* at ¶ 62).

**CONCLUSIONS OF LAW**

**A.** **Pleading Standard.** The sufficiency of Plaintiffs' claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[7] In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

---

[7]     The undersigned recommends that the Court **REJECT** any suggestion by Plaintiffs that Alabama's pleading rules control in this case (*see* Doc. 33, at 2-4). While Plaintiffs cite to two cases decided by this Court in support of their position, *Hosea v. Jones,* 2014 WL 5846395, *3 (S.D. Ala. Nov. 12, 2014) ("Alabama courts have not adopted the plausibility standard of pleading applied in the federal courts."); *Hampton v. Georgia-Pacific L.L.C.,* 2011 WL 5037403, *4 (S.D. Ala. Oct. 24, 2011) ("[A] federal court should not look to the federal standard for sufficient pleading under Rule 8 and 12(b)(6) to determine whether the state-court petition provides a reasonable basis for predicting that the plaintiff could recover against the in-state defendant at least when, as here, the state pleading standard is more lenient."), those cases are not ultimately helpful to Plaintiffs here (as the language of *Hampton* makes clear) because they were decided in the fraudulent joinder context and whether the cases should be remanded to state court because the state-court complaints stated plausible claims against the in-state defendants under the more lenient state pleading standard. That is not the issue in this case, as American Fidelity is obviously not an in-state (Alabama) defendant, the doctrine of fraudulent joinder is inapplicable, and Plaintiffs never filed a motion to remand following the removal of this action. Therefore, Plaintiffs' standard of review argument must necessarily yield to the cases cited by Defendant, such that Plaintiffs must "comply with federal pleading requirements[]" after "the case has been removed to federal court[.]" *Lynch v. Jackson,* 478 Fed.Appx. 613, 616 (11th Cir. June 5, 2012); *see Jaggars v. City of Sheffield, Alabama,* 2014 WL 2123210, *3 n.4 (N.D. Ala. May 21, 2014) ("The majority rule seems to be [] that federal pleading standards, including *Twombly/Iqbal,* apply to removed complaints."). In short, the federal pleading standard applies to this case.

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id*. at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Sys. AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual

allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual

allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In addition to the pled averments relevant to these Plaintiffs' claims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v.*

*First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Accordingly, this Court will consider the application paperwork and TexasLife policies as part of the pleadings in weighing the sufficiency of Plaintiffs' claims to state plausible claims for relief. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")).

### B.     <u>Fraudulent Misrepresentation</u>.

The elements of a fraud claim under Alabama law are: "'(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance.'" *Billy Barnes Enterprises, Inc. v. Williams,* 982 So.2d 494, 499 (Ala. 2007), quoting *George v. Associated Doctors Health & Life Ins. Co.,* 675 So.2d 860, 862 (Ala. 1996); *see also Cook's Pest Control, Inc. v. Rebar,* 28 So.3d 716, 725 (Ala. 2009) (setting forth the following four elements for fraudulent misrepresentation: "'(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance.'"). And specifically with respect to the third element, it is clear that "[i]f in the exercise of reasonable care, the plaintiff would have discovered the facts or would have had reason to doubt the truth of the representation, then his reliance is not reasonable and if he has knowledge or notice of certain facts which would excite inquiry or the surrounding circumstances . . . would have aroused

suspicion in the mind of a reasonable person, he cannot be said to have relied on the misrepresentation." *Federal Savings & Loan Ins. Corp. v. Haralson,* 813 F.2d 370, 374 (11th Cir. 1987) (internal quotation marks omitted).

Here, Defendant contends that Plaintiffs cannot plausibly allege "reasonable reliance" because the TexasLife policies they admit receiving contradict the alleged misrepresentations at issue, namely, that the new policies were equivalent to their policies in place and that the premiums would be more stable than those of their old policies. (Doc. 31, at 6-7; *see also* Doc. 35, at 3-5). In particular, Defendant contends that Plaintiffs were advised in the documents provided to them to compare their old policies with the proposed new policies because the two might have different features and benefits is inconsistent with any alleged misrepresentation about "equivalence" (Doc. 31, at 6-7; *see also* Doc. 35, at 4) and, further, Plaintiffs' policies had detailed scheduled premium payments which allowed them to compare the "stability" of the respective premium payments, thereby belying any reasonable reliance in this regard (*compare* Doc. 31, at 7 *with* Doc. 35, at 4-5).

And while the Defendant is correct that the general rule under Alabama law is that a party cannot reasonably rely on representations that contradict the written terms in documents the party is capable of reading, *AmerUs Life Ins. Co. v. Smith,* 5 So.3d 1200, 1208 (Ala. 2008) ("[T]his Court has consistently held that a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents."), "the determination of whether this proposition applies to bar a fraud claim is appropriate only *after* the facts have been fully

developed." *Morris v. Automobile Ins. Co. of Hartford, Connecticut,* 2012 WL 3637624, *4 (N.D. Ala. Aug. 17, 2012) (emphasis supplied), citing *AmerUs Life Ins. Co., supra,* 5 So.3d at 1208 ("applying this principle on a motion for judgment as a matter of law"); *see also Wiggins v. FDIC,* 2016 WL 8260898, *11 (N.D. Ala. Dec. 20, 2016) (citing favorably to *Morris, supra,* and finding "Plaintiffs have not shown Ellis and CCLLC cannot plead reasonable reliance as a matter of law."), *report and recommendation adopted,* 2017 WL 659928 (N.D. Ala. Feb. 14, 2017). *Morris* and *Wiggins* are persuasive[8] and because Plaintiffs "have sufficiently alleged the 'reasonable reliance' element of fraud, and as a whole have satisfied the pleading requirements for their fraud claim against [American Fidelity,]" *Morris, supra,* at *4, the undersigned recommends that the Defendant's motion to dismiss Plaintiffs' fraudulent misrepresentation claim be **DENIED**.

### C.    <u>Fraudulent Suppression & Negligence Claims</u>.

"The elements of fraudulent suppression are: '(1) [t]he defendant had a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result.'" *Cockrell v.*

---

[8]    This is particularly the case in light of the Plaintiffs' complaint allegations that at the point of purchase they were asked to sign electronic signature boxes on an iPad or other tablet without being shown copies of the TexasLife policies and that their purchases of the TexasLife policies were based solely upon Defendant's "misleading oral misrepresentations" (Doc. 28, at ¶ 28); after the sales were recorded American Fidelity cancelled the Fidelity Life policies (*id.* at ¶ 29); that with respect to some of the Plaintiffs the defendant falsely claimed it was not replacing existing insurance (*id.* at 30); and the application paperwork/letters accompanying the TexasLife policies sent to Plaintiffs after they had already purchased the new policies did not contain language allowing Plaintiffs to know that their long-term care coverage had been cancelled (*id.* at ¶ 35).

*Pruitt,* 214 So.3d 324, 338 (Ala. 2016) (citations omitted); *see also Alabama Psychiatric Servs., P.C. v. 412 South Court Street, LLC,* 81 So.3d 1239, 1247 (Ala. 2011) (same). Moreover, "'"[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."'" *Hilyer v. Fortier,* 227 So.3d 13, 22 (Ala. 2017) (citations omitted); *see also Prill v. Marrone,* 23 So.3d 1, 6 (Ala. 2009) ("'The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.'")[9].[10]

Under Alabama law, "[a] duty to disclose may arise either from a confidential relationship between the parties or from the particular circumstances of the case." *Barnett v. Funding Plus of America, Inc.,* 740 So.2d 1069, 1074 (Ala. 1999) (citation omitted). And in making the determination of whether the "circumstances of the case"

_____

[9]     The undersigned has combined the elements of these two claims together for discussion because duty is an essential element of each claim and American Fidelity stakes the position that it did not "owe Plaintiffs a duty to disclose that Plaintiffs would no longer have a long-term care rider." (Doc. 31, at 7-9; *see also* Doc. 35, at 7-10).

[10]     The undersigned **DECLINES** to recommend herein that Plaintiffs' negligence *per se* claim be **dismissed** at this stage of the litigation. Despite the recognition by several Northern District of Alabama cases that "there is no Alabama tort cause of action known as negligence per se[,]" because this doctrine is merely a subsidiary of negligence "whereby a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred[,]" *Prickett v. BAC Home Loans,* 946 F.Supp.2d 1236, 1247 (N.D. Ala. 2013) (citation omitted); *see also Costine v. BAC Home Loans,* 946 F.Supp.2d 1224, 1233 (N.D. Ala. 2013) (same), the court in *Prickett* only dismissed the negligence *per se* claim because Plaintiffs "failed to identify, either in their complaint or in their brief, any applicable statute or regulation that has been violated." *Id.*; *see also Costine, supra,* 946 F.Supp.2d at 1233 (exact same analysis). Here, of course, unlike in *Prickett* and *Costine,* Plaintiffs have alleged in the Amended Complaint that the Defendant violated a statute and/or insurance regulations designed to protect them (and in their brief in opposition to dismissal they discuss the insurance regulations); therefore, this claim should be allowed to proceed until a later stage of this case, when Plaintiffs should be made to choose between negligence and negligence *per se* (provided, of course, both claims do not go out on summary judgment). In other words, somewhere down-the-line these claims will become duplicative but now is not the time to make Plaintiffs choose between negligence and negligence *per se.*

give rise to a duty to disclose, courts consider the following factors: "'(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'" *Id.*, quoting *State Farm Fire & Cas. Co. v. Owen,* 729 So.2d 834, 842-43 (Ala. 1998).

Plaintiffs base their fraudulent suppression and negligence claims on the allegation that American Fidelity had a duty under common law and Alabama's statutes and insurance regulations to disclose affirmatively to Plaintiffs that purchasing the new TexasLife policies offered by Defendant would cause them to lose long-term care coverage. (*See* Doc. 28, at ¶¶ 54, 58 & 62). The Defendant stakes the position that Plaintiffs have not identified a basis for its alleged duty (*compare* Doc. 31, at 8-9 *with* Doc. 35, at 7-10) and then proceeds to attempt to establish that Plaintiffs have failed to identify any circumstances giving rise to a duty of disclosure.[11]

Initially, the undersigned simply notes that American Fidelity nowhere cites to any case decided by an Alabama court (or a federal court applying Alabama law) which stands for the proposition that a plaintiff must specifically plead the factors identified by the Alabama Supreme Court that inform the determination of whether the circumstances of the case give rise to a duty to disclose. Defendant's inability to cite an Alabama case in which a duty to communicate in light of the circumstances of the case has been decided on motion to dismiss simply reflects that this issue is properly addressed, in the

_____

[11]     For purposes of this Report and Recommendation, the undersigned has found no need to address the alternative arguments regarding a duty arising under Alabama's insurance regulations inasmuch as it is the undersigned's opinion that the Defendant has not established that it is entitled to dismissal of Plaintiffs' fraudulent suppression and negligence claims based upon a failure to properly plead a duty to communicate under the circumstances in this case.

first instance, in the context of summary judgment (or a later stage) after full-blown discovery. *See, e.g., Flying J Fish Farm v. Peoples Bank of Greensboro,* 12 So.3d 1185, 1192-93 (Ala. 2008) (affirming the grant of summary judgment on suppression claim); *Davis v. Sterne, Agee & Leach, Inc.,* 965 So.2d 1076, 1091-92 (Ala. 2007) (reversing the trial court's grant of summary judgment in favor of the defendant on plaintiff's fraudulent suppression claim); *Armstrong Business Servs., Inc. v. AmSouth Bank,* 817 So.2d 665, 679 (Ala. 2001) (affirming summary judgment on suppression claim on the basis that no duty of disclosure was owed by AmSouth to ABS); *Ex parte Liberty Nat. Life Ins. Co.,* 797 So.2d 457, 465 (Ala. 2001) (finding fraudulent suppression claim properly submitted to the jury). And, in absence of such case law, the undersigned would recommend that this Court find that the Plaintiffs have satisfied their pleading burden as to duty by averring that Defendant had a duty under common law and Alabama's statutes and insurance regulations to affirmatively disclose to Plaintiffs that purchasing the new TexasLife policies offered by Defendant would cause them to lose long-term care coverage (*see* Doc. 28, at ¶¶ 54, 58 & 62). However, even if more is required of Plaintiffs at the pleading stage, they have supplied it in their amended complaint and in their brief in opposition to the motion to dismiss.

Defendant appears to suggest that Plaintiffs' sole argument is that the agents were significantly more knowledgeable than Plaintiffs (Doc. 33, at 7) and that this argument is insufficient because the Alabama Supreme Court has recognized that "in practically any transaction, particularly those involving specialized areas like insurance, one party will have greater knowledge than the other[,]" *Owen, supra,* 729 So.2d at 843, such that "[s]uperior knowledge of fact, without more, does not impose upon a party a

legal duty to disclose such information." *Surrett v. TIG Premier Ins. Co.,* 869 F.Supp. 919, 925 (M.D. Ala. 1994) (citation omitted). However, the undersigned disagrees with Defendant's argument in this regard for several reasons. First, the superior knowledge argument by Plaintiffs in their brief is not the only "factor" argument, as the Defendant ignores, for example, Plaintiffs' additional argument (and averments) that the custom of the insurance trade requires salesmen to accurately disclose critical facts of which they are more knowledgeable (*see* Doc. 33, at 7; *compare id. with* Doc. 28, at ¶¶ 25-30).[12] More importantly, the cases the Defendant relies upon to undermine Plaintiffs' position that the circumstances of the case gave rise to a duty to disclose were decided either on summary judgment, *see Surrett, supra* (determination made on summary judgment) or at a later stage in the proceedings, *see Owen, supra* (reversal of jury verdict in favor of the insured), thereby detracting from the Defendant's appeal to this Court to make this determination on motion to dismiss. Indeed, that this issue is best decided, in the first instance, at summary judgment is clear in light of the Alabama Supreme Court's recognition that "'[w]here the defendant has superior knowledge of the suppressed fact and the defrauded party has been induced to take action that otherwise might not have been taken, the obligation to disclose is particularly compelling.'" *Ex parte Liberty Nat. Life Ins. Co., supra,* 797 So.2d at 465, quoting *Baker v. Bennett,* 603 So.2d 928, 935 (Ala. 1992); *compare id. with Gilmer v. Crestview Memorial Funeral Home, Inc.,* 35 So.3d 585, 594 (Ala. 2009) ("'If a plaintiff offers evidence of particular circumstances creating an inference that the defendant should have disclosed certain material facts,

_____

[12]     As well, the Defendant does not recognize all the circumstances averred in the amended complaint.

then whether the defendant had a duty to communicate those facts is for the jury to determine.'"). Here, Plaintiffs allege superior knowledge by the Defendant (and its agents) (*compare* Doc. 33, at 7 *with* Doc. 28, at ¶¶ 25-30), that the custom of the insurance trade is for agents to disclose critical facts of which they have superior knowledge (*see id.*), that having long-term care coverage was important to them (*see, e.g.,* Doc. 28, at ¶ 14) thereby alleging the value of the particular facts suppressed (that is, the value of the suppressed fact that the TexasLife policy had no long-term care rider), that they were approached and solicited by the agents employed by the Defendant after American Fidelity took action to obtain a list of teachers who had insurance payed for through payroll deductions (*id.* at ¶¶ 19-21), that had they been informed by American Fidelity agents that the new policies underwritten by TexasLife did not have a long-term care rider they would not have purchased those policies (*id.* at ¶ 27), and the parties actively dispute whether Plaintiffs had an opportunity to ascertain that the TexasLife policies did not have a long-term care rider. Indeed, relative to this last issue, the undersigned is recommending that the motion to dismiss Plaintiffs' misrepresentation claim be denied at this stage until development of all the facts.

Based upon the foregoing, this Court is in no position to determine, at this stage of the proceedings, that the circumstances of this case do not give rise to a duty to communicate. Thus, Defendants' motion to dismiss Plaintiffs' fraudulent suppression and negligence claims should be **DENIED**.

**D.    Whether the Claims of Four of the Five Named Plaintiffs are Time-Barred**.

The statute of limitations for fraud and negligence claims is two years. *Compare Bryant Bank v. Talmage Kirkland & Co., Inc.,* 155 So.3d 231, 237 (Ala. 2014) ("'"A fraud action is subject to a two-year statute of limitations.'") *with Utilities Bd. of City of Opp v. Shuler Bros., Inc.,* 138 So.3d 287, 292 (Ala. 2013) ("'The statutory period of limitations for negligence . . . actions, found at Ala.Code 1975, § 6-2-38, is two years from the date the injury occurred."'"). American Fidelity contends that the claims of Bowman, Scott, Wiggins and Hanna are barred by Alabama's two-year statute-of-limitations provisions because the allegations of the Amended Complaint make clear that the statements or omissions which caused Plaintiffs to purchase their policies occurred before the policies were purchased and, given the purchase dates (March 6, 2015 for Bowman and Scott; February 25, 2015 for Wiggins, and March 2, 2015 for Hanna), these four plaintiffs' claims are time-barred. For their part, Plaintiffs' contend that their claims are tolled by the discovery rule (Doc. 33, at 8), prompting the reply from Defendant that there is no discovery rule that could toll the two-year statute of limitations with respect to Plaintiffs' negligence and negligence *per se* claims (*see* Doc. 35, at 11, citing *Utilities Bd. of City of Opp v. Shuler Bros., Inc.,* 138 So.2d 287, 292 (Ala. 2013)) and that the discovery rule cannot save these four plaintiffs' fraud claims because Plaintiffs "fail to explain how American Fidelity fraudulently concealed the fact that their Texas Life policies did not include a long-term care rider." (Doc. 35, at 11).

Initially, the undersigned notes that while it may well be the general rule under Alabama law that the "discovery rule" only applies to fraud actions, *see Shuler Bros.,*

*supra,* the savings clause in § 6-2-3 of the Alabama Code also applies "to any cause of action fraudulently concealed." *Ex parte Price,* 244 So.3d 949, 957 n.2 (Ala. 2017) (citation omitted); *see also Limon v. Sandlin,* 200 So.3d 21, 26 (Ala. 2016) ("[W]e similarly conclude that the savings clause applies not only to the plaintiffs' fraud count, but also to the remaining tort-based claims [including, negligence] asserted in the plaintiffs' complaint."); *DGB, LLC v. Hinds,* 55 So.3d 218, 225-26 (Ala. 2010) (recognizing that "§ 6-2-3 'applies to the fraudulent concealment of the existence of a cause of action'"). Accordingly, as with the fraud claims, *see infra,* the Alabama Supreme Court "has held that to show that a plaintiff's claims fall within the savings clause of § 6-2-3 a complaint must allege the time and circumstances of the discovery of the cause of action. . . . The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *DGB, LLC, supra,* 55 So.3d at 226 (citations omitted); *see also Limon, supra,* 200 So.2d at 24-25 ("This Court has held that to show that a plaintiff's claims fall within the savings clause of § 6-2-3 a complaint must allege *the time and circumstances of the discovery of the cause of action.* The complaint must also allege *the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury.*" (internal quotation marks and citations omitted)).[13] In addition, the Alabama Supreme Court has consistently stared that a "'dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent

---

[13] Thus, the undersigned need recommend that the Court reject any suggestion by the Defendant that the discovery rule cannot save the negligence and negligence *per se* claims asserted by Bowman, Scott, Wiggins and Hanna.

that the tolling provisions **do not apply**.'" *DGB, LLC, supra,* 55 So.3d at 226 (emphasis

supplied)*,* quoting *Travis v. Ziter,* 681 So.2d 1348, 1351 (Ala. 1996); *see Aliant Bank, a*

*Division of US Ameribank v. Four Star Investments, Inc.,* 244 So.3d 896, 915 (Ala.

2017) (reversing the grant of summary judgment on statute-of-limitations grounds on

Aliant's negligence and breach-of-fiduciary claims, finding "[u]nder the[] facts, the

question of when Aliant's tort claims accrued is a question for the jury; a court cannot

properly decide as a matter of law when a reasonable person should have discovered

that claims had been fraudulently concealed unless the evidence is undisputed.").

Here, the Plaintiffs properly alleged the circumstances surrounding the discovery

of the Defendant's putative fraud and negligence in averring that they did not know that

their new policies underwritten by TexasLife lacked long-term care until November 2017

when "[a]n insurance salesman for an unrelated company informed [them] that their

current policies lacked a long-term care provision." (Doc. 28, at ¶ 36.) As for the facts

and circumstances by which American Fidelity purportedly concealed their fraudulent

and tortious conduct and what prevented Plaintiffs from discovering the Defendant's

conduct, Plaintiffs aver that the Defendant's agents misrepresented the nature of the

policies being sold (by indicating that the policies being sold were equivalent to their

"old" policies) and that written information provided to them after purchase of the "new"

polices nowhere contains clear language allowing "Plaintiffs to know that their long-term

care coverage had been cancelled." (Doc. 28, at ¶ 35; *see also id.* at ¶¶ 25-30, 50, 54,

58 & 62.)[14]  Based on the foregoing allegations, the undersigned recommends that the

_____

[14]     American Fidelity contends that Plaintiffs fail to explain how the unidentified
salesman determined the TexasLife policies did not have a long-term care rider in late 2017,
other than by reading one of the policies, as Plaintiffs could have done years earlier. (*See* Doc.
(Continued)

Court decline, at this stage of the proceedings, to dismiss four of the named Plaintiffs' claims on statute-of-limitations grounds.[15]

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the Defendant's motion to dismiss Plaintiffs' amended complaint (Doc. 31) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the

---

35, at 11-12.) This argument, however, ignores the Plaintiffs' initial claim that the Defendant's agents misrepresented that the two policies were equivalent and since this Court must necessarily await full development of the facts before determining whether Plaintiffs' misrepresentation claim is viable, this Court should, likewise, decline to find that Plaintiffs should have discovered their claims years before late 2017. In other words, given that Plaintiffs have sufficiently alleged that the agents of American Fidelity misrepresented that the two policies were equivalent, it begs the question (at this point in time) why the Plaintiffs would have read the policies to search for evidence that the representations of these insurance agents were not true.

[15]     The contents of this report and recommendation should not be read to suggest anything other than that the undersigned believes that Plaintiffs' claims should be factually developed through discovery before a determination is made regarding their viability.

absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 15th day of November, 2018.

                    s/P. BRADLEY MURRAY
                    **UNITED STATES MAGISTRATE JUDGE**